Filed 8/4/26  P. v. Johnson CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B343835 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. XSONA033985-02 |
| v. | |
| LESTER JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed as modified; remanded with directions.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Lester Johnson appeals from his resentencing under Penal Code section 1172.75.[1] Johnson contends the court erred in declining to strike his prior strike, declining to strike his firearm enhancements, and reimposing the upper term on the second count for attempted murder as well as on the firearm enhancements. Johnson also contends the abstract of judgment must be corrected to state accurately his presentence credits and the date of his resentencing. We find no error in the court's rulings and therefore affirm. We remand for the superior court to correct the abstract of judgment.

## FACTS AND PROCEDURAL BACKGROUND

1. ***Johnson shoots one victim in the head, killing her, and a second victim in the leg***[2]

On May 24, 1996, Johnson—together with Gregory Lane Burr—arranged to buy marijuana from Danielle Washington. During the transaction, an argument arose. Johnson pulled out a handgun, pointed it at Washington's cheek below her eye, and pulled the trigger, killing her. Frederick Walker, who witnessed the shooting, turned to run out of the apartment. Johnson fired one round at Walker, grazing his upper calf. Walker ran to a nearby apartment for help. Police arrived to find Washington lying on the ground "in a 'large puddle of blood.'"

2. ***The charges, verdicts, and sentence***

Police arrested Johnson about four months later. The People charged him with the murder of Washington (count 1), the attempted murder of Walker (count 2), and being a convicted

---

[1] References to statutes are to the Penal Code.

[2] As Johnson refers to the probation report for the underlying facts, we do as well.

felon in possession of a firearm (count 5).  In the murder and attempted murder counts, the People alleged both Johnson and Burr personally used a firearm, and a principal used a firearm, in the commission of the crimes.  The People also alleged Johnson had a prior strike conviction for attempted robbery—constituting a five-year prior as well—and a one-year prison prior.

A jury convicted Johnson of second degree murder, attempted murder, and possession of a firearm by a felon.  The jury also found the firearm allegations true.  In a bench trial, the court found the strike, five-year prior, and prison prior true.  The court sentenced Johnson to 75 years and four months to life calculated as follows:  On count 1, 15 years to life, doubled because of the strike, plus 10 years for the gun; on count 2, the upper term of nine years, doubled, plus 10 years for the gun; and on count 5, one-third the midterm of eight months, doubled.  The court imposed a five-year serious felony prior and a one-year prison prior.

Another panel of this court affirmed Johnson's conviction.  (*People v. Burr et al.* (Oct. 22, 1999, B124335) [nonpub. opn.].)

### 3.     *The CDCR notice and resentencing*

In 2023, the court apparently received a notice from the California Department of Corrections and Rehabilitation that Johnson was eligible for resentencing under Senate Bill No. 483 (2021–2022 Reg. Sess.).[3]  The court appointed counsel for Johnson.

**Johnson's motion for resentencing.**  On November 6, 2024, Johnson's counsel filed a motion for full resentencing.  Counsel asked the court to strike Johnson's strike, strike his

---

[3]     The record on appeal does not include the notice.

firearm enhancements, impose the low terms on the attempted murder count and the firearm enhancements, and run the sentences on the three counts concurrently. Counsel attached a number of exhibits, including summaries of interviews with two of Johnson's sisters, certificates and documents reflecting classes Johnson had taken while in prison, laudatory chronos Johnson had received, documents reflecting Johnson's work history, his plans for reentry if released, and excepts from his parole packet for a 2021 parole hearing.

Among other documents in the parole packet was a typewritten statement by Johnson. Johnson stated his father was an alcoholic who beat his mother. When Johnson was 10 or 11 years old he "started to claim" the Nutty Block Crips. Several of Johnson's friends were killed in gang incidents. Another friend was shot to death by police "for trying to carjack someone." Johnson began carrying a gun "at all times" for protection. He "did not want to get killed." In 1995 Johnson's brother was shot in the chest but survived. Later that year he was killed in a car crash when "[s]omeone was chasing him."

Johnson wrote that on May 24, 1996, he went to a party in Long Beach. He asked about weed and Burr drove him to get some. A gun slid out from under the passenger seat of Burr's car and Johnson picked it up. Washington said she had weed " 'in the back' " and they all walked to the back of an apartment. Washington and Johnson "got into an argument over the amount of weed." Washington called Johnson "a Bitch" and "[he] pulled out the gun and shot her in the head." Johnson then "saw a gun in Mr. Walker's hand and [he] shot [Walker]."

In a "closing statement," Johnson wrote, "I'm guilty of it all and that my sentence was fair." He continued, "But the person

4

sitting before you all today is a changed man." Johnson included letters of apology he had written to Walker, to the "parents and family" of Washington, and to Washington herself (though she, of course, was deceased).

Johnson's counsel also attached to his motion a March 2024 Comprehensive Risk Assessment (CRA) prepared by a forensic psychologist, Dr. Robert Koranda, for the Board of Parole hearings. Dr. Koranda had interviewed Johnson by Microsoft Teams in February 2024. He described in some detail his upbringing, criminal history, and conduct while in prison. Dr. Koranda recounted Johnson's statements that he "was 'all in gangbanging' by 7th grade." When he was about "16 years old, he was involved in a physical altercation at a swap meet, brandished his firearm, and shot at people before running away." Johnson admitted "perpetrating acts of domestic violence towards several women." "[W]ith one partner, Lena [W.], he 'jumped on her' and 'beat her bad, it was really violent and ugly' during an argument when he was under the influence of alcohol and drugs."

Johnson had previously been charged with murder but that charge was eventually dropped. Johnson also had "admitted during his last CRA[4] that he tried to have a person unrelated to his Life crime killed." Dr. Koranda stated Johnson had received about 10 rules violation reports between 2002 and 2017. Three of those "were issued for violent or aggressive behavior," including threats to take deliberate actions against other inmates in November 2002, possession of an inmate-manufactured deadly weapon in March 2014, and possession of a deadly weapon in August 2017. The doctor also noted the 2021 assessment stated

---

[4]     We discuss Johnson's 2021 CRA below.

5

Johnson had " 'participated in group decision making that led to the death of an inmate and a riot.' " He added Johnson had "challenged the accuracy of this information."

Dr. Koranda stated Johnson had continued to engage in antisocial acts even after his conviction—acts that are "reflected in his records and disciplinary history." However, he continued, there had been "a noticeable improvement in his conduct as he has matured," noting Johnson had had "no serious rule violations since 2017." The doctor listed the "most relevant [and] salient . . . considerations" for assessing a risk of violence, including Johnson's "lack of recent formal participation in substance abuse programming," his "history of violence and antisocial conduct from a young age," his "extensive pattern of arrests/convictions for violence [sic] offenses," his "prior parole and probation violations," his "[m]ultiple violations of the institutional rules," and his "history of violence against several women, including the victim of his Life crime." He also listed the most relevant and salient "desistance or mitigating considerations," including "aspects of feasibility" in his parole plans, his completion of "several relapse prevention plans intended to mitigate his risk for violence," his "plans to enroll in a truck driving school," his reported "disassociat[ion] from prison gang activity over 10 years [earlier]," his "demonstrated transparency into the factors that resulted in the commission of his Life crime and negative perceptions towards women," and his "extensive amount of personal support" from his family and friends.

Taking all of this into account, Dr. Koranda concluded Johnson "represent[ed] a Low risk for violence" "if granted parole supervision." He stated he'd considered "[a] slightly higher risk rating," especially in light of the 2021 CRA, but believed Johnson

had "appeared to use this additional time in prison to expand upon his self-awareness into the factors that have resulted in violent and antisocial conduct when he was younger."

**The prosecution's response.** On November 22, 2024, the prosecutor filed a response to Johnson's motion, conceding the court should strike his prison prior but opposing any other changes to his sentence. The prosecutor attached a printout of Johnson's criminal history (a so-called "CLETS"). Johnson had been arrested twice in January 1991 for assault with a deadly weapon and for carrying a concealed weapon. In February 1991 he was arrested for arson. In August 1991 Johnson was arrested for driving under the influence. In February 1992 he was arrested for attempted robbery and battery, and subsequently convicted. (This was Johnson's strike prior.) He was granted probation but his probation was revoked when he was convicted in September 1993 of carrying a loaded firearm in a public place and other weapons offenses, and sentenced to prison. (This was the prison prior.) In May 1996 Johnson committed the crimes in this case.

The prosecutor also attached as an exhibit a March 2021 CRA by a forensic psychologist, Dr. Rachel Stieferman, for the parole board. Citing the probation report, Dr. Stieferman stated Johnson's arrest for assault with a deadly weapon "involved a physical assault of his girlfriend." (This appears to be the same incident involving Lena W. that Dr. Koranda discussed.) Johnson "had been drinking during this incident when he pulled the victim off the couch, dragged her to the bedroom, pulled her hair and started pushing her head against the wall until she passed out." When asked about this incident, Johnson replied, " 'Yes, it was a fight.' "

Dr. Stieferman stated Johnson's attempted robbery conviction "also involved a female victim who was assaulted and robbed." When asked to explain this case, Johnson stated, " 'She (the robbery victim) was a lady in the neighborhood who used drugs and she was owing us some money and we jumped on her.' " Dr. Stieferman also described an incident in the probation report (again, noted in the later CRA as well) about "a phone call Mr. Johnson had in county jail on the current charges." In the call "he attempted to arrange to kill the witness, the second victim in the crime [referring to Walker]." "When asked about this, [Johnson] stated, 'In that case no, the current case yes.' However, he later explained that he was attempting to have someone unrelated to this case killed."

After discussing her clinical assessment, Johnson's "substance abuse history and related disorders," his "major mental" and "personality" disorders, his institutional adjustment and programming, his parole plans if granted release, her assessment of his risk for violence, and his "risk of future violence," Dr. Stieferman concluded,

> "Mr. Johnson was taught early on to use violence in response to interpersonal concerns. This tool led him to commit and order numerous acts of violence throughout his life. Despite having no recent documented violence, Mr. Johnson continues to feel the need to protect himself via doing harm to others, resulting in making weapons. . . . He did not appear forthcoming during the current interview . . . . [¶] . . . [¶] . . . Mr. Johnson represents a high risk for violence. He presents

with markedly elevated risk relative to long-term parolees . . . ."

**The reply and the hearing**. Defense counsel filed a reply to the prosecutor's response.

The parties appeared before the court on January 31, 2025. The court heard from Johnson as well as a number of his family members. The court also heard from counsel. The court stated it was "very concerned" that, after being in prison for years, Johnson nevertheless possessed a deadly weapon in 2017 and an inmate-manufactured weapon in 2014. The court also noted Johnson's other rules violations showed "his refusal to adhere to rules."

After hearing further argument from both Johnson's counsel and the prosecutor, the court ruled.

> "First, the court is fully aware of its discretion under Romero, under 1172.75, the other ameliorative statutes which have been recently enacted, as well as the California Supreme Court appellate court rulings citing judges in the application of the law to specific facts of the case. [¶] Fully aware in exercising that discretion, the court does find that the defendant continues to be a threat to society and finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety lesser than the sentence that the court is now going to impose. [¶] Originally he was sentenced to 75 years to life. By operation of law the court is going to strike the one-year prior pursuant to Penal Code 667.5. Exercising

the court's discretion, the court is going to strike the five-year state prison prior pursuant to Penal Code section 667(a). The court believes by clear and convincing evidence that any further reduction of the defendant's sentence at this time would endanger the public."

The court then resentenced Johnson to a total aggregate term of 69 years four months to life: 15 years to life, doubled, on count 1 plus 10 years for the firearm enhancement; the upper term of nine years on count 2, doubled, plus 10 years for the firearm enhancement; and one-third the midterm of eight months, doubled, on count 5. The court noted Johnson had credits of 637 actual days plus 96 good time/work time days for a total of 733 days on the date of his original sentence. The court stated Johnson's "current actual days credit" was 9,718 days.

## DISCUSSION

### 1. *Section 1172.75*

In 2021, the Legislature enacted section 1172.75, which declares invalid one-year prison prior sentencing enhancements imposed under section 667.5, subdivision (b). (§ 1172.75, subd. (a).) The statute requires the CDCR to identify those individuals in its custody currently serving a term for a judgment that includes a prison prior enhancement. (*Id*., subd. (b).) If the court determines the defendant's judgment includes a prison prior enhancement, the court must recall the sentence and conduct a full resentencing of the defendant. (*Id*., subd. (c); see *People v. Rhodius* (2025) 17 Cal.5th 1050, 1067, fn. 3 ["where § 1172.75 applies, it requires full resentencing"]; *People v. Monroe* (2022) 85 Cal.App.5th 393, 402.)

10

Resentencing under section 1172.75 "shall result in a lesser sentence than the one originally imposed . . . unless the court finds . . . that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) When resentencing a defendant, the court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion." (*Id.*, subd. (d)(2).) The court may consider postconviction factors, including the defendant's disciplinary record while incarcerated, and evidence that reflects "that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3); see *People v. Dowdy* (2024) 107 Cal.App.5th 1, 6–7.)

Here, the trial court reduced Johnson's sentence by six years. Accordingly, his resentencing "result[ed] in a lesser sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).) Johnson contends, however, that the court should have "further reduce[d]" his sentence, and that it erred in not striking his prior strike and his firearm enhancements, and not "impos[ing] middle or lower term sentences."

## 2. *Standard of review*

We review a trial court's decision whether to strike a previous serious or violent felony for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374–375 (*Carmony*).) We also review a court's ruling under section 1172.75 for abuse of discretion. (*People v. Garcia* (2024) 101 Cal.App.5th 848, 856–857 (*Garcia*).) We ask whether substantial evidence supports the trial court's findings of fact, whether its rulings of law are correct, and whether its application of the law to the facts was arbitrary or capricious. (*Id.* at p. 857.)

11

Section 1172.75, subdivision (d) "vests the superior court with broad discretion based on an inherently factual inquiry." (*Garcia, supra,* 101 Cal.App.5th at pp. 856–857.) "Absent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042; accord, *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157.) The burden is on the party challenging the sentencing decision to show that the court abused its discretion. (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

3. ***The trial court did not abuse its discretion in declining to strike Johnson's prior strike under Romero***[5]

"[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero, supra*, 13 Cal.4th at p. 528.) The law "does not offer a discretionary sentencing choice . . . but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike," unless the court concludes it should make an exception to the scheme because—" 'for articulable reasons [that] can withstand scrutiny for abuse' "—the " 'defendant should be treated as though he actually fell outside the Three Strikes scheme.' " (*People v. Strong* (2001) 87 Cal.App.4th 328, 337–338.)

"Consistent with the language of and the legislative intent behind the three strikes law," our Supreme Court has "established stringent standards that sentencing courts must follow in order to find such an exception." (*Carmony, supra*, 33 Cal.4th at p. 377.) The law "not only establishes a sentencing

---

[5]   *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

12

norm[;] it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so." (*Id*. at p. 378.) The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) A court's "great power" to dismiss a prior strike conviction should only be used in " 'extraordinary' circumstances, when the ends of justice demand it." (*People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1105.)

The record here does not support Johnson's contention that the court abused its discretion. The "nature and circumstances" of Johnson's crimes (*Williams*, *supra*, 17 Cal.4th at p. 161) exhibited a callous disregard for human life. Johnson put his gun to the victim's face and pulled the trigger, killing her in a dispute over half an ounce of marijuana and her having called him "a bitch." When Walker—who hadn't done anything to Johnson—tried to run away, Johnson shot him. Johnson later explained that the witness he'd sought to have killed was not Walker, but another individual.

The record doesn't contain many facts about Johnson's prior strike. Johnson himself told the parole board that "we"— referring to a group, apparently—"jumped on her [the victim]," as she owed them money for drugs. The probation report states the group kicked the victim in the face and took one dollar from her.

13

Johnson admittedly had made some progress in rehabilitation, taking classes and receiving positive chronos. And the forensic psychologist in the most recent CRA opined Johnson presented a low risk for violence—though he detailed a number of remaining "relevant" risk factors.  Nevertheless, "[o]n this record, we see nothing about the nature and circumstances of the present felonies and the prior strike conviction or the particulars of [Johnson's] background, character, and prospects that suggests [he] could be deemed outside the spirit of the Three Strikes law." (*People v. Dain* (2025) 115 Cal.App.5th 235, 252.)  In short, we cannot conclude this is a case "where no reasonable people could disagree that the [defendant] falls outside the spirit of the three strikes scheme." (*Carmony*, *supra*, 33 Cal.4th at p. 376.)

4.     ***The trial court did not abuse its discretion in declining to strike Johnson's firearm enhancements***

Johnson contends the trial court's denial of his request to strike his firearm enhancements "was unsupported by substantial evidence and was an abuse of discretion."  Johnson also asserts the court "failed to address the applicable mitigating factors identified by the defense"—specifically, of multiple enhancements and childhood trauma.  We disagree.

Section 1385, subdivision (c)(2) (section 1385(c)(2)), as added by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), provides that a sentencing court, " '[i]n exercising its discretion' " to dismiss a sentencing enhancement, " 'shall consider and afford great weight to evidence offered by the defendant to prove' " certain enumerated mitigating circumstances, and " '[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing

14

the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1028 (*Walker*).) "[I]f the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice." (*Id.* at p. 1036.) The *Walker* court explained, "This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Ibid.*, quoting *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098 (*Ortiz*).)

Section 1385(c)(2) lists nine mitigating circumstances. Johnson contends two of them apply here: "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed."; and "(E) The current offense is connected to prior victimization or childhood trauma." (§ 1385(c)(2)(B), (E).) We address each in turn.

*Multiple enhancements*. It appears Johnson means to argue the court erred in declining to strike one of his two firearm enhancements. Johnson notes he relied on the "multiple enhancements" factor in the trial court, referring to both his firearm enhancements and his five-year prior serious felony enhancement. However, as noted, the court—over the

15

prosecution's objection—granted Johnson's request to strike the five-year prior.

"Under section [1385(c)(2)], the trial court must give great weight to a mitigating circumstance 'unless the court finds that dismissal of the enhancement would endanger public safety.' " (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 227.) Subdivision (c)(2) expressly recognizes "that a court may decline to strike an enhancement that would endanger public safety." (*People v. Renteria* (2023) 96 Cal.App.5th 1276, 1286 (*Renteria*).) "The Legislature specifically defined '[e]ndanger public safety' to mean 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*Gonzalez*, at p. 227.)

Section 1385(c)(2) "does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 299 (*Mendoza*).) There is no requirement that a court's finding of dangerousness be made by clear and convincing evidence or any other elevated standard. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 240; *Ortiz, supra*, 87 Cal.App.5th at pp. 1096–1097.)

While "the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence." (*People v. Gonzalez, supra*, 103 Cal.App.5th at p. 228.) Even when a mitigating circumstance has been established and there has been no showing that dismissal of the enhancement

16

would endanger public safety, a trial court may nevertheless decline to dismiss the enhancement if dismissal would be contrary to the interests of justice.  (*Walker*, *supra*, 16 Cal.5th at p. 1036.)  In making such a determination, the court may consider "the nature and circumstances of the crimes and the defendant's background, character, and prospects." (*People v. Mazur* (2023) 97 Cal.App.5th 438, 446.)

In declining to strike Johnson's firearm enhancements, the trial court stated it was "very concerned" that Johnson had continued to possess deadly weapons while in prison, and had violated other prison rules.  As for Johnson's background and character, again, he killed Washington execution-style and then took a shot at a witness as he tried to run away.  A court may rely on the circumstances of the offense to find a defendant a danger to the public.  (Cf. *People v. Graham* (2024) 102 Cal.App.5th 787, 798–799 [trial court did not abuse its discretion in finding the defendant posed an unreasonable risk of danger to public safety under sections 1001.36 and 1170.18 based on the serious and violent nature of the crimes and the defendant's actions during the commission of those crimes]; see also *Mendoza*, *supra*, 88 Cal.App.5th at p. 298 [determination of whether dismissal would endanger public safety under section 1385(c)(2) is similar to whether resentencing the petitioner would pose an unreasonable risk of danger to public safety under section 1170.18, subdivision (b)]; *Garcia*, *supra*, 101 Cal.App.5th at pp. 856–857.)

**Childhood trauma**. While Johnson discusses his difficult childhood at some length in his argument that the court erred in declining to strike his strike, his analysis of the issue under section 1385(c)(2) is limited to one paragraph.  Johnson asserts

17

"this factor was plainly established by the above-described defense evidence about [Johnson's] difficult and traumatic upbringing, and the abuse he endured as a child at the hands of his father."  Johnson then argues the court "never explained what aggravating factors, if any, it was relying on to counterbalance this factor, or whether and for what reasons it was finding this factor to be inapplicable."

There are two problems with Johnson's argument.  First, because the trial court reasonably found any additional reduction of Johnson's sentence would endanger public safety, the presence of the mitigating circumstance is irrelevant.  (*Mendoza*, *supra*, 88 Cal.App.5th at p. 297 ["consideration of the mitigating factors in section 1385(c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety"]; *Renteria*, *supra*, 96 Cal.App.5th at pp. 1289–1290 [legislative history shows Legislature understood mitigating circumstance for multiple enhancements did not require dismissal of enhancements where dismissal would endanger public safety].)

Second, assuming Johnson made a sufficient showing of childhood trauma, the record does not reflect a nexus between that trauma and his crimes.  (Cf. *People v. Lopez-Tapia* (2026) 120 Cal.App.5th 690, 698–701 [rejecting defendant's contention under section 1170, subdivision (b)(6) that his childhood trauma was a contributing factor in his decision to join a gang at a young age, and his gang membership in turn contributed to his commission of witness dissuasion]; *People v. Brown* (2026) 121 Cal.App.5th 481, 485–486 [threshold determination of whether childhood trauma was a contributing factor in the commission of the offense is a quintessential factfinding process; substantial evidence supported trial court's finding that

18

defendant's childhood trauma did not play a causal role in leading him to commit the offense].) Johnson doesn't explain how growing up with his abusive, alcoholic father and his early entry into gang life "[was] connected to" his point-blank shooting of Washington over a small amount of marijuana. When Dr. Koranda asked Johnson "what prompted [him] to commit the murder," "he offered that when they were discussing the amount of marijuana that he was going to purchase, the female victim called him a 'bitch,' describing that his father had instilled the belief that women should never disrespect him or talk to him in a certain manner. He also stated that the female's statement was a sign of disrespect towards him, as well as his gang." We doubt this is the sort of link between "childhood trauma" and the commission of murder that the Legislature had in mind when it enacted section 1385(c)(2).

5.    ***The trial court did not err in reimposing the upper term***

Johnson also contends the trial court erred in imposing the upper term on the attempted murder count and firearm enhancements. Johnson urges us to follow *People v. Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*) rather than *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*). We decline.

As we noted, when conducting a resentencing hearing under section 1172.75, subdivision (d)(2) requires the court to "apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) amended section 1170, subdivision (b) (section 1170(b)) to prohibit

19

imposition of a sentence that exceeds the middle term where a statute specifies three possible terms. (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(2) permits imposing the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term . . . exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

The resentencing provision under section 1172.75 provides an exception to the factfinding requirement of section 1170(b). Section 1172.75, subdivision (d)(4) states:

> "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

The first clause—"Unless the court originally imposed the upper term"—provides an exception from the second clause's factfinding requirement for defendants who were originally sentenced to the upper term. According to the court in *Brannon-Thompson*, the plain language of section 1172.75, subdivision (d)(4) states the factfinding requirement under section 1170(b) applies only if the court is imposing the upper term for the first time. (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) *Brannon-Thompson* concluded section 1172.75

20

permits the court to reimpose an upper term sentence even if a factfinder never found an aggravating factor beyond a reasonable doubt.  (*Brannon-Thompson*, at p. 458.)

We see no ambiguity in section 1172.75 and agree with the *Brannon-Thompson* court's interpretation of it.  (See *People v. Cornett* (2012) 53 Cal.4th 1261, 1265 [when interpreting a statute, "[t]he plain meaning controls if there is no ambiguity in the statutory language"].)

Citing *Gonzalez, supra*, 107 Cal.App.5th 312, Johnson contends this statutory exception violates the Sixth Amendment. *People v. Mathis* (2025) 111 Cal.App.5th 359, 372–373, review granted Aug. 13, 2025, S291628 (*Mathis*) addressed this issue. In *Mathis*, the version of section 1170(b) in effect at the time of the defendant's original sentence in 2017 granted the trial court broad discretion to select any of the three prison terms provided for the offense.  The middle term was not presumptive and there was no requirement that a jury or a court find a particular fact to justify imposition of the upper term.  Section 1170(b) did not violate the Sixth Amendment because an additional factual determination was unnecessary to impose a greater sentence. (*Mathis*, at p. 373.)

According to *Mathis*, because this same statutory scheme was in effect when the Legislature established section 1172.75, the heightened factfinding requirement was not necessary for defendants who originally received the upper term.  (*Mathis, supra*, 111 Cal.App.5th at p. 373.)  Those defendants would have been sentenced under the earlier version of section 1170(b), which gave courts the broad discretion to dispense with the heightened factfinding requirement.  (*Mathis*, at p. 373.)  Under this version of section 1170(b), an upper term sentence would

21

have complied with the Sixth Amendment when originally imposed. (*Mathis*, at pp. 373–374.) When resentencing under section 1172.75, a court need not engage in any additional factfinding if the upper term originally was imposed.

Johnson notes that in *Cunningham v. California* (2007) 549 U.S. 270, the United States Supreme Court held unconstitutional the version of section 1170(b) in effect when he was sentenced in 1998. In *People v. Dozier* (2025) 116 Cal.App.5th 700, review granted Feb. 11, 2026, S294597, our colleagues in Division Seven addressed an issue left open in *Mathis*. Justice Segal posed this question: "Can a resentencing court impose pre-2007 upper terms based on circumstances not found true by a fact finder?" (*Dozier*, at p. 705.) The court said the answer to this question is yes. (*Id*. at pp. 705, 714 ["we conclude resentencing pre-2007 defendants like Dozier to an upper term under section 1172.75, subdivision (d)(4), without heightened factfinding, does not violate the Sixth Amendment"].)

The Supreme Court has granted review in *People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903, as well as in *Dozier*, and it will have the final say on whether section 1172.75, subdivision (d)(4) permits a court to reimpose an upper term sentence without satisfying the factfinding requirement of section 1170(b). (See *Mathis*, *supra*, 111 Cal.App.5th at pp. 372–373, fn. 6.) Until then, we agree with *Brannon-Thompson, Mathis,* and *Dozier*, and decline to follow *Gonzalez*. (See also *People v. Moss* (2026) 120 Cal.App.5th 375, 380 [following "the many appellate courts disagreeing with *Gonzalez* for the reasons stated by those courts"]; *People v. Lua* (2026) 121 Cal.App.5th 472.)

## 6. *The parties agree the abstract of judgment must be corrected to state Johnson's credits accurately*

After this appeal was underway, Johnson filed a motion with the trial court to correct his presentence credits. The abstract of judgment filed February 7, 2025, after Johnson's January 31, 2025 resentencing, listed only his credits at the time of his original sentencing in 1998. The trial court granted the motion and, on November 26, 2025, issued a minute order correctly stating the presentence credits as 10,451 days (637 actual days plus 96 conduct credits for 733 days as of 1998 plus another 9,718 actual days as of January 31, 2025). However, the amended abstract of judgment filed December 1, 2025 states the wrong date (November 26 rather than January 31) and the wrong credits. The parties agree the superior court must correct these errors.

We direct the superior court on remand to amend the final abstract of judgment to state the correct sentencing date and credits. (*People v. Mitchell* (2001) 26 Cal.4th 181, 188 [appellate court may order modification of inaccuracies in abstract of judgment]; *People v. Moore* (1991) 226 Cal.App.3d 783, 788 [modifying judgment to correct conduct credits].)

## DISPOSITION

The superior court is to prepare an amended, corrected abstract of judgment and to forward a certified copy to the California Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, Acting P. J.

We concur:


ADAMS, J.


HANASONO, J.